UNITED STATES DISTRICT COURT      <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

DANA MIDDLETON,

                    Petitioner,                   MEMORANDUM
                                           <u>AND ORDER</u>
                                         07-CV-2810 (JG) (VVP)

          -against-

ROBERT ERCOLE, Superintendent,
Green Haven Correctional Facility,

                    Respondent.
-------------------------------------------------------------x
A P P E A R A N C E S :

       DANA MIDDLETON
            03AD820
            Green Haven Correctional Facility
            P.O. Box 4000
            Stormville, NY 12582
            Petitioner, *Pro Se*

       CHARLES J. HYNES
            Kings County District Attorney
            Renaissance Plaza
            350 Jay Street
            Brooklyn, NY 11201
       By:   Diane R. Eisner
            Leonard Joblove
            Attorney for Respondent

JOHN GLEESON, United States District Judge:

        Dana Middleton, currently incarcerated in Green Haven Correctional Facility,

petitions for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, seeking relief from his

conviction in New York State Supreme Court on charges of robbery in the first degree and

criminal possession of a weapon in the second degree. Middleton, appearing *pro se*, claims (1)

1

that the trial court deprived him of a trial by an impartial jury and of due process of law when it

learned that one juror was behaving in a manner suggestive of misconduct and of a lack of

qualification to serve and did not declare a mistrial or examine the juror, (2) that his trial counsel

provided ineffective assistance by failing to move to reopen the *Wade* hearing[1] at which

Middleton challenged his identification by the victim when the victim's trial testimony

contradicted his testimony at the *Wade* hearing, and (3) that his appellate counsel provided

ineffective assistance by failing to claim that his trial counsel was ineffective for failing to move

to reopen his *Wade* hearing. For the reasons stated below, the petition is denied.

BACKGROUND

A.      *The Crime and the Investigation*

The government's evidence at trial established that at approximately 3:50 AM on

September 3, 2001, at a street fair celebrating the pre-Caribbean Day festival "Jouvert" at the

intersection of Church Avenue and East 57th Street in Brooklyn, Dana Middleton snatched a

chain and medallion from Adrian Roberts through the window of Roberts's stopped car. Roberts

exited the vehicle to confront Middleton and looked in Middleton's face for two or three

seconds, after which Middleton fired a gunshot that struck Roberts's car. Three police officers in

an unmarked patrol car, Lieutenant David Siev and Officers Andrew Johnson and Raymundo

Navedo, observed this entire incident and exited their vehicle to give chase. Middleton appeared

to point his gun at the officers, and Officer Johnson fired a shot in the direction of Middleton.

Middleton fled on foot along East 57th Street and Linden Boulevard, pursued by Officers

---

[1]      Although *United States v. Wade* concerned the Sixth Amendment right to counsel at post-indictment identification procedures, 388 U.S. 218, 236-37 (1967), hearings challenging pre-indictment identification procedures as unduly suggestive under the due process clauses of the Fifth and Fourteenth Amendments are referred to as "*Wade* hearings."

Johnson and Navedo on foot and Lieutenant Siev in a commandeered civilian car. Officer Johnson observed Middleton discard an object, and broke off the chase to retrieve what turned out to be a cellular phone. Lieutenant Siev arrested Middleton after confirming his identity with Navedo.

During the officers' pursuit of Middleton, Roberts drove around looking for Middleton and the officers who pursued him. He encountered several police officers, who informed him that someone had been arrested for his robbery and gave him directions to the 67th Precinct. Roberts drove to the precinct and immediately on entry saw Middleton standing at the main desk. Roberts and his friend Marley Edwards (who had also been in the car with Roberts during the robbery) identified Middleton as the robber.

Later on September 3, 2001, a resident of 920 Linden Boulevard called the police to report a discarded Glock 9-millimeter pistol outside his house. The police recovered the pistol and through ballistic examination determined that it had fired a shell casing recovered on East 57th Street and Church Avenue.

B.      The Wade *Hearing and the Trial*

Middleton was indicted for attempted murder in the second degree, robbery in the first degree, and criminal possession of a weapon in the second degree.[2] An identification hearing was conducted over several days in December of 2002 to determine whether Roberts's identification of Middleton at the precinct was impermissibly suggestive. The trial judge denied Middleton's motion, ruling that the identification was not police-arranged because the officers

---

[2]      Middleton claims that his indictment also charged him with criminal possession of a weapon in the third and fourth degrees, robbery in the third degree, and grand larceny in the fourth degree. The indictment itself is not in the record before me, but the jury was charged only with the elements of robbery in the first degree, criminal possession of a weapon in the second degree, attempted murder in the second degree, and the lesser included offense of attempted assault in the second degree. Trial Tr. 764-76.

who directed Roberts to the precinct did not know that Roberts would see Middleton at the front desk immediately upon arriving at the precinct, and thus did not violate Middleton's rights. At the hearing, Roberts did not identify the officers who directed him to the precinct as having been involved in the chase of Middleton. At trial, however, Roberts claimed that he recognized one of the officers who directed him to the precinct to have been involved in chasing Middleton. Middleton's trial counsel did not move at that point to reopen his *Wade* hearing.

During its deliberations, the jury sent a note to the court which read as follows:

> We have a juror that is basing her judgment on her personal experience. She is insisting that she has heard testimony that does not exist. She insists two pictures of the defendant were shown. She is not basing her decision on court testimony. The juror has shown her security badges and spoke of her hunting licenses. She is insisting that testimony has been given that does not exist. Can we please get an alternate juror?

Trial Tr. 814. The trial court stated, "Obviously, there is a juror that is having a problem. I don't want to get to the specifics of any problem that she is having . . . ." *Id.* at 814. The court proposed a response generally re-instructing the jurors on their duty to base their findings on the law and evidence, advising them that they could request testimony to be read back to them, and telling them that the alternate jurors had been discharged. *Id.* at 815-16.

Middleton's trial counsel objected to the proposed instruction, stating, "The only question on [the note] is: Can we get an alternate juror, and the answer to that is, no. My position at this point is that, clearly, there is a juror on this jury who is problematic, whoever it is cannot be fair and impartial. Based upon that, I ask for a mistrial at this point. That's my request." *Id.* at 816. The court stated that it would not declare a mistrial, saying, "I don't want to analyze this. We can all guess what might be going on, but I think this is a fair way to respond

4

to the note. So I am going to do that," *id.* at 818, to which Middleton's trial counsel replied,

"Please note my exception, for the record," *id.* The prosecutor did not ask for an inquiry into the

juror's behavior. *Id.* at 816-18. The court gave essentially the instruction it had proposed, also

repeating its earlier instruction that jurors should not consider any specialized knowledge they

might have. *Id.* at 821-25. It also told the jury, "If one of you gets sick, we will have to wait for

you to get better, but the 12 of you are going to have to continue in this case," and overruled

Middleton's counsel's objection that this statement was coercive. *Id.* at 825.

        The jury resumed deliberations and delivered another note to the court, which

read as follows:

> One juror is note [sic] following the definition of the law. We
> have a juror that insists that if a person possesses a loaded gun,
> then it means attempted murder. This is not the definition as stated
> by the court. The judge has laid out two times what qualifies for
> attempted murder, and we have one juror that feels 13 bullets in a
> gun equals attempted murder. Can you please explain this charge
> again.

*Id.* at 825-26. While the court was deciding how to respond to this second note, the jury sent a

third note, reading:

> Juror No. 2 wants to make a decision based on her notes alone, yet
> doesn't want to show us the read back. She stated that her notes
> are more accurate than what was read to us this morning, and says
> her decision was made based on her notes, which leads us to
> believe that this juror did not act in good faith in making a decision
> long before we started deliberating. She is paranoid, stating that
> evidence is being withheld. When we returned from hearing the
> clerk, [reading Roberts's testimony], she said that wasn't
> Roberts['s] testimony just the clerk reading it, so it's not accurate,
> again implying her notes are more accurate than the actual
> transcripts.
>
> She claims she wants to see/hear evidence but refuses to write it
> down. So when we write it down for her, she comes back and

> refuses to deliberate on the evidence. She is using personal
> experience, discussing events that didn't occur, and people that
> were not there, including the victim's mother who wasn't even
> there.

*Id.* at 827-28. The court rejected Middleton's counsel's renewed request for a mistrial, and

decided to ignore the third note as it did not contain a question. *Id.* at 828-29. The court re-

instructed the jury on the elements of attempted murder and, over Middleton's counsel's

objection, also asked them if they had reached a verdict on any counts. *Id.* at 829-33. Almost

immediately the jury sent a note indicating that it had reached a verdict on some counts. Over

Middleton's counsel's objection, the trial court took a partial verdict, with the jury finding

Middleton guilty of robbery in the first degree and criminal possession of a weapon in the second

degree. The court declared a mistrial on the attempted murder and attempted assault counts.

C.      *Appeal and Collateral Proceedings*

Middleton, represented by new counsel, appealed his conviction. Middleton's

appellate counsel argued that Middleton was deprived of a fair trial when the court denied

Middleton's motion for a mistrial; did not conduct an inquiry into whether the juror in question

was qualified to serve or committed misconduct; coercively suggested that deliberations could

last a long time, invited the jury to reach a partial verdict, and then accepted the partial verdict;

and failed to respond at all to the last jury note. The Appellate Division, Second Department,

found that the acceptance of a partial verdict was proper, and claimed that Middleton's

contention that the trial court should have conducted an inquiry into the problematic juror was

"unpreserved for appellate review" based on Middleton's trial counsel's failure to ask the trial

court for an inquiry. *People v. Middleton*, 795 N.Y.S.2d 649, 649 (2d Dep't 2005). The

Appellate Division did not consider Middleton's trial counsel's motion for a mistrial -- which it

characterized as based on "unspecified claims that the juror in question could not be fair and impartial" -- sufficient to preserve the issue. *Id.* The New York Court of Appeals denied Middleton's application for leave to appeal from the Appellate Division's decision. *People v. Middleton*, 5 N.Y.3d 808, 808 (2005).

Middleton then applied *pro se* for a writ of error *coram nobis*, claiming that his appellate counsel provided ineffective assistance by failing to argue that trial counsel provided ineffective assistance for failure to (1) move to reopen the *Wade* hearing, (2) request that the court conduct an inquiry into whether any jurors were unqualified to serve or were committing misconduct, and (3) request an adverse inference instruction regarding the prosecution's failure to disclose the 911 tape that led to the pistol being recovered. The Appellate Division denied Middleton's application, *People v. Middleton*, 822 N.Y.S.2d 459, 459 (2d Dep't 2006), and the Court of Appeals denied leave to appeal. This petition followed.

DISCUSSION

A.      *Standard of Review*

  1.      *Review of Procedurally Defaulted Claims*

A state court's explicit reliance on a procedural bar preventing adjudication of the merits of a claim generally constitutes an independent and adequate state law ground for the state court's judgment precluding federal review. *See Harris v. Reed*, 489 U.S. 255, 260-62 (1989) (explaining rationale for habeas corpus procedural default rule); *see also Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (noting a state's interest in "channeling the resolution of claims to the most appropriate forum, in finality, and in having an opportunity to correct its own errors").

However, there are several circumstances in which a federal claim disposed of by a state procedural rule will still be reviewable on a federal petition for habeas corpus.

First, a petitioner can review a procedurally defaulted claim if she can show "cause for the default, and actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750. A petitioner may establish cause by showing "'that the factual basis for a claim was not reasonably available to counsel . . . or that some interference by officials . . . made compliance impracticable.'" *Id.* at 753 (internal quotation marks omitted) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show prejudice, a petitioner must demonstrate that the alleged error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Torres v. Senkowski*, 316 F.3d 147, 152 (2d Cir. 2003) (internal quotation marks omitted).

Second, if a petitioner cannot show cause and prejudice, his procedural default may still be excused if he can demonstrate that a fundamental miscarriage of justice would result from a failure to hear the claim on the merits -- that is, "that he is actually innocent of the crime for which he has been convicted." *Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 321 (1995)). This ground for excusing procedural default should be applied only in "extraordinary" cases, as courts consider substantial claims of actual innocence to be "extremely rare." *Schlup*, 513 U.S. at 321-22; *but see* The Innocence Project, *Facts on Post-Conviction DNA Exonerations*, http://www.innocenceproject.org/Content/351.php (last visited Nov. 26, 2007) (recording 145 post-conviction exonerations based on DNA analysis since 2000).

8

Third, a procedural rule can fail to be a state ground "adequate" to protect a judgment from federal collateral attack in rare circumstances.[3] There is a "limited category" of "exceptional cases where exorbitant application of a generally sound rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376 (2002) (citation omitted). Whether or not a procedural rule is adequate to prevent a federal court from reaching the merits of a claim "is determined with reference to the 'particular application' of the rule; it is not enough that the rule 'generally serves a legitimate state interest.'" *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (quoting Lee, 534 U.S. at 387). The requirement of adequacy is intended to prevent state courts from avoiding "deciding federal issues by invoking procedural rules that they do not apply evenhandedly to all similar claims." *Id.* (quoting *Garcia v. Lewis*, 188 F.3d 71, 77 (2d Cir. 1999)).

Accordingly, the question courts must ask to determine adequacy is "whether application of the procedural rule is 'firmly established and regularly followed' in the specific circumstances presented in the case, an inquiry that includes an evaluation of the asserted state

---

[3]     The Supreme Court does not explicitly characterize either cause and prejudice or a miscarriage of justice as affecting the adequacy of the procedural ground. *See Coleman*, 501 U.S. at 750 ("In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to *an independent and adequate* state procedural rule, federal habeas review of the claims is barred *unless* the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." (emphasis added)); *but see Edwards v. Carpenter*, 529 U.S. 446, 455 (2000) (Breyer, J., concurring in judgment) (characterizing cause and prejudice or miscarriage of justice as rendering state procedural default inadequate); *also Levine v. Comm'r of Corr. Servs.*, 44 F.3d 121, 126 (2d Cir. 1995) ("A state procedural default qualifies as an independent and adequate ground *unless* the petitioner shows cause for the default and prejudice resulting therefrom." (emphasis added and internal quotation omitted)). Of course, cause and prejudice or a miscarriage of justice may result in a petitioner's release from custody or other relief, which necessarily renders the procedural ground in some sense inadequate to support the judgment pursuant to which the petitioner is in custody. However, the independent and adequate state grounds doctrine is prudential rather than jurisdictional in the habeas context. *Cotto v. Herbert*, 331 F.3d 217, 238 (2d Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 522-23 (1997)); *see also Spence v. Superintendent, Great Meadow Corr. Facility.*, 219 F.3d 162, 171 (2d Cir. 2000) ("The doctrine of procedural default is based on considerations of comity and finality, and not on a jurisdictional limitation on the power of a federal court under 28 U.S.C. § 2254 to look beyond a state procedural default and consider the merits of a defaulted claim that asserts a constitutional violation."). Therefore, it is possible to say, as the Supreme Court did in *Coleman*, that even an "adequate" state ground will not bar review if the petitioner can show cause and prejudice or a miscarriage of justice.

interest in applying the procedural rule in such circumstances." *Cotto*, 331 F.3d at 240. In determining the adequacy of the application of a procedural rule, courts look to the following "guideposts":

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance would serve a legitimate governmental interest.

*Cotto*, 331 F.3d at 240; *see also Lee*, 534 U.S. at 381-83 (first articulating these factors).

    2.    *Review of State Adjudications on the Merits Under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") narrowed the scope of federal habeas review of state convictions regarding claims the state court adjudicated on the merits. 28 U.S.C. § 2254(d). A federal habeas court may now overturn a state court's ruling on the merits of a claim only if the state decision was "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.*

The Supreme Court has interpreted the phrase "clearly established Federal law, as determined by the Supreme Court of the United States" to mean "the holdings, as opposed to the dicta," of its decisions at the time of the state court decision. *Williams v. Taylor*, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the

state decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13.

A decision is "an unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." *Id.* at 413. An unreasonable application is more incorrect than a merely erroneous one, *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (citing *Williams*, 529 U.S. at 411), but while "[s]ome increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence," *Gilchrist*, 260 F.3d at 93 (quoting *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted)).

AEDPA's limited scope of review applies whenever a state court disposes of a state prisoner's federal claim on the merits and reduces its disposition to judgment, regardless of whether it refers to federal law in its decision. *Sellan v. Kuhlman*, 261 F.3d 303, 312 (2d Cir. 2001).

B.      *Juror Misconduct and Juror Qualification*

Middleton claims that he was deprived of due process of law and his right to a trial by an impartial jury by the trial judge's failure to either declare a mistrial or conduct an inquiry upon receiving the three problematic jury notes.

1.      *Failure to Declare a Mistrial*

There is some question whether the Appellate Division addressed the merits of Middleton's claim that he was entitled to a mistrial as a result of the misconduct and the lack of

qualification of at least one juror. The Appellate Division affirmed on the merits the trial court's acceptance of a partial verdict, but used language suggesting it was considering only Middleton's challenge to the partial verdict as coercively procured. *Middleton*, 795 N.Y.S.2d at 649. It did not mention Middleton's claims of jury improprieties except in finding Middleton's claim that he was entitled to an inquiry procedurally barred. *Id.*

The Appellate Division therefore apparently dealt with Middleton's demand for a mistrial based on jury improprieties by noting that Middleton's remaining contentions were "either unpreserved for appellate review or lacking in merit." *Id.* A claim disposed of in this manner is not procedurally defaulted, *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810 (2d Cir. 2000), and in any case there is no apparent procedural bar to Middleton appealing the trial court's denial of his timely motion for a mistrial. Middleton argues that it was not adjudicated on the merits either, but § 2254(d) does not contemplate a "middle ground" between dispositions on procedural grounds and dispositions on the merits, *Jimenez v. Walker*, 458 F.3d 130, 145-46 (2d Cir. 2006). Since his appeal requesting a mistrial was clearly not procedurally defaulted, § 2254(d) requires me to treat it as denied on the merits and to limit the scope of my review accordingly.

The trial court's refusal to declare a mistrial was not "contrary to, or an unreasonable application of, clearly established Federal law" within the meaning of § 2254(d). Of the cases Middleton cites, *Smith v. Phillips*, 455 U.S. 209 (1982), most closely resembles this case. There, the Supreme Court held that due process did not require a mistrial when a juror, in the middle of a criminal trial, sent an application to work at the office of the district attorney

prosecuting the defendant.  *Id.* at 211-12.  While it suggested that some inquiry was required, the Court expressly rejected the claim that a mistrial was mandatory:

> [D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation.  Were that the rule, few trials would be constitutionally acceptable. . . .  Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.  Such determinations may properly be made at a hearing like that ordered in *Remmer* [*v. United States*] and held in this case.

*Id.* at 217.  It was not contrary to or an unreasonable application of *Phillips*' rule to hold that a mistrial was not automatically required upon the receipt of the notes in question.

The other two Supreme Court cases Middleton cites only provide general support for the importance of trial by an impartial jury, but do not establish any entitlement to a mistrial upon a preliminary showing of jury partiality made during deliberations.  *See Irwin v. Dowd*, 366 U.S. 717, 723-28 (1961) (reversing conviction obtained in highly publicized case where eight out of twelve jurors stated in voir dire that they believed the defendant was guilty); *Estes v. Texas*, 381 U.S. 532, 534-38 (1965) (reversing conviction where large portions of trial and pretrial proceedings were intrusively televised).  Indeed, the Supreme Court's treatment of jury deliberations does not support Middleton's claim that he was entitled to a mistrial based on one juror refusing to deliberate.  Challenges based on the behavior of jurors during their deliberations not involving contact with outside parties receive less judicial solicitude than those based on outside influence.  *See Tanner v. United States*, 483 U.S. 107, 120, 127 (1987) (noting intrusiveness of inquiry into jury deliberations where no extrinsic influence is alleged, and holding that Sixth Amendment does not require hearing involving juror testimony where

allegations of jury intoxication were made after the verdict); *cf., e.g.*, *Turner v. State of La.*, 379 U.S. 466, 472-74 (1965) (reversing conviction where deputy sheriffs sequestering jurors were prosecution witnesses). Even when the alleged impropriety concerns extrinsic influence on a jury, the remedy is a hearing, not an automatic mistrial. *See Phillips*, 455 U.S. at 215 ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."); *see also Remmer v. United States*, 347 U.S. 227, 229-30 (1954) (ordering hearing when FBI investigated alleged bribe offered to juror during trial).

Middleton contends that the Appellate Division's characterization of his mistrial motion as based on "unspecified claims that the juror in question could not be fair and impartial," *Middleton*, 795 N.Y.S.2d at 649, constitutes an "unreasonable determination of the facts in light of the evidence presented at the State court proceeding." § 2254(d)(2). Middleton argues that his motion for a mistrial was not based on "unspecified" claims but rather on the quite specific allegations of partial behavior contained in the jury notes. I share Middleton's puzzlement at the Appellate Division's characterization of his claims as "unspecified," but its use of this adjective is not an "unreasonable determination of the facts" within the meaning of § 2254(d)(2). The Appellate Division referred to Middleton's *claims* as unspecified, which is a characterization of his legal position, not a factfinding.

2.      *Failure to Conduct an Inquiry*

Middleton argues that even if he was not automatically entitled to a mistrial, at a minimum the trial court was obligated to inquire further upon receiving the notes. The Appellate Division rejected this claim as procedurally barred due to Middleton's counsel's failure to make

14

a contemporaneous objection requesting this form of relief. *Middleton*, 795 N.Y.S.2d at 649

("The defendant's contention that the court should have conducted an inquiry to determine

whether one of the jurors was 'grossly unqualified to serve' . . . is unpreserved for appellate

review, as the defendant never requested such an inquiry but instead moved for a mistrial based

on unspecified claims that the juror in question could not be fair and impartial." (citations

omitted)).

Middleton does not assert cause and prejudice for the procedural default, or claim

that a fundamental miscarriage of justice would result from a failure of this Court to reach the

merits of his claim, but argues instead that the procedural rule applied by the Appellate Division

is not adequate to bar review of the federal question. Accordingly, I must consider the factors set

forth in *Lee v. Kemna* to determine whether or not this case is one of the few where "exorbitant

application of a generally sound rule renders the state ground inadequate to stop consideration of

a federal question." 534 U.S. at 376

     i.     *Whether Perfect Compliance Would Have Changed the Trial Court's Decision*

*Lee* first asks "whether the alleged procedural violation was actually relied on in

the trial court, and whether perfect compliance with the state rule would have changed the trial

court's decision." *Cotto*, 331 F.3d at 240. When the alleged procedural violation is the failure to

raise an objection before a trial court, it is irrelevant to ask whether the trial court relied on the

violation, as the only violation occurs when the defendant raises an argument on appeal not heard

by the trial court. *Garvey v. Duncan*, 485 F.3d 709, 719 (2d Cir. 2007); *see also* N.Y. Crim.

Proc. Law § 470.05(2) (setting forth contemporaneous objection as prerequisite for appellate

consideration of question). The first *Lee* factor in such cases consists only of the question

"whether perfect compliance with the state rule would have changed the trial court's decision." *Garvey*, 485 F.3d at 719.

It is not possible to know with certainty whether the trial court's decision would have been the same if Middleton's counsel had, in addition to seeking a mistrial based on the notes, sought an inquiry of the juror or jurors who were the subject of the notes. There is some reason to believe the court would not have made such an inquiry. The court stated, "Obviously there is a juror that is having a problem. I don't want to get to the specifics of any problem that she is having, but I propose to answer the note something as follows," and then proposed a general response re-instructing the jury on the importance of basing their verdict on the law and the evidence. Trial Tr. 814-15. Middleton, apparently understanding "get to" to mean "inquire into," concludes that the trial court ruled out the possibility of conducting an inquiry even before Middleton moved for a mistrial. However, the context of the sentence, which was a preface to proposing a verbal response, suggests that it is at least as likely that the trial court used "get to" to mean "specifically remark on while addressing the jury." At best, this factor is equivocal for Middleton.

ii.     *Whether State Caselaw Indicated that Compliance was Demanded in the Specific Circumstances Presented*

*Lee*'s second inquiry is "whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented." *Cotto*, 331 F.3d at 240. New York's contemporaneous objection rule by its terms does not seem to require specificity regarding the form of objections or relief sought.[4] However, New York courts have construed it

---

[4]     The provision reads as follows:

to require specification of the type of relief requested in cases where defense lawyers challenge juror qualifications. In *People v. Pain*, a defendant's claim that the court should have conducted an inquiry as to whether any jurors were unqualified to serve was not preserved by two motions for a mistrial that did not specify that any jurors were unqualified to serve. 748 N.Y.S.2d 691, 691 (2d Dep't 2002). *Pain* is distinguishable because Middleton's motions for a mistrial clearly refer to the notes and specify a claim that at least one juror is unqualified to serve. Trial Tr. 816, 829.

In *People v. Bunch*, a juror informed the court during deliberations that she believed she had been robbed by an accomplice of the defendant. 717 N.Y.S.2d 385, 385 (2d Dep't 2000). The juror was questioned and claimed she could be fair and impartial. *Id.* The defendant moved for a mistrial on the grounds that the entire panel was tainted. The Appellate Division held that this motion for a mistrial was not sufficient to preserve the claim that the trial court should have conducted an inquiry as to whether the entire panel was tainted. *Id.*

Middleton argues that *Bunch* is distinguishable because in *Bunch* there was not a serious reason to suspect the entire panel of taint, whereas here the notes make clear that the juror in question is not impartial. Even assuming that Middleton's characterization is correct, the

---

For purposes of appeal, a question of law with respect to a ruling or instruction of a criminal court during a trial or proceeding is presented when a protest thereto was registered, by the party claiming error, at the time of such ruling or instruction or at any subsequent time when the court had an opportunity of effectively changing the same. Such protest need not be in the form of an "exception" but *is sufficient if the party made his position with respect to the ruling or instruction known to the court*, or if in reponse [sic] to a protest by a party, the court expressly decided the question raised on appeal. In addition, a party who without success has *either expressly or impliedly* sought or requested a particular ruling or instruction, is deemed to have thereby protested the court's ultimate disposition of the matter or failure to rule or instruct accordingly sufficiently to raise a question of law with respect to such disposition or failure regardless of whether any actual protest thereto was registered.

N.Y. Crim. Proc. Law § 470.05(2) (emphasis added).

logic behind his distinction is faulty, as the difference between the request Bunch did not preserve (for an inquiry) and the request he made (for a mistrial) was in the relief requested, not in the specification of the alleged error. Since the purpose of the contemporaneous objection rule is to give trial courts the opportunity to correct their own errors, it might make sense to require less precision in specifying the error objected to when the error is so obvious that the trial court is, or should be, already aware of it.[5] *See Osborne v. Ohio*, 495 U.S. 103, 125 (1990) ("[I]n determining the sufficiency of objections we have applied the general principle that an objection which is ample and timely to bring the alleged federal error to the attention of the trial court and enable it to take appropriate corrective action is sufficient to serve legitimate state interests, and therefore sufficient to preserve the claim for review." (quoting *Douglas v. Alabama*, 380 U.S. 415, 422 (1965))). But the flagrancy of error should not relieve the objector of the burden of specifying the *relief sought*, as opposed to the error. Even if the trial court in *Bunch* was not aware of the potential for a tainted jury panel, it became aware of that potential when Bunch made his motion for a mistrial based on the tainted jury panel. *Bunch* construes § 470.05(2) to require precise specification of the remedy requested when the alleged problem is not obvious but is made known to the judge by a motion for a mistrial; this requirement does not evaporate in cases where the problem is apparent before the mistrial motion. Nor should it, especially in this setting, where the decision whether to seek a mistrial or an inquiry (which can often rehabilitate an unwanted juror) is loaded with strategy. The trial judge in Middleton's case not only knew he had not requested an inquiry of any jurors, but had reason to believe he did not want one.

---

[5] Indeed, as Middleton notes, the trial court here actually was aware of the problem. *See* Trial Tr. 814 ("Obviously, there is a juror that is having a problem.").

18

Even if *Bunch* were distinguishable, *People v. Lombardo*, 61 N.Y.2d 97 (1984), is not. In *Lombardo*, a juror sent a note during deliberations stating that she did not think she could render a fair and impartial verdict. *Id.* at 103. The defendant moved for a mistrial and did not join the prosecutor's request to either recall and recharge the jury or else to inquire further into the problem with the juror in question. *Id.* The trial court recalled and recharged the jury but did not inquire with the complaining juror. *Id.* After the recharged jury convicted the defendant, the Appellate Division found the defendant's claim on appeal that the trial court should have conducted an inquiry to be procedurally barred. *Id.* at 103-04. The differences between *Lombardo* and this case do not help Middleton. In *Lombardo* the lack of qualification was admitted by the juror as opposed to suggested by the statements of other jurors, but this does not make Middleton's case stronger. In *Lombardo* the prosecutor requested an inquiry, but if anything this makes the case for waiving the contemporaneous objection requirement stronger, as it directs the trial court's attention to the possibility of an inquiry. Accordingly, New York caselaw indicates that compliance is demanded in the specific circumstances presented.

iii.    *Whether Middleton Substantially Complied with the Rule Given the Realities of Trial so that Demanding Perfect Compliance Would Serve No Legitimate Governmental Interest*

Finally, *Lee* requires courts to ask whether a petitioner "'substantially complied' with the rule given 'the realities of trial,' and, therefore, whether demanding perfect compliance would serve a legitimate governmental interest." *Cotto*, 331 F.3d at 240. In *Lee*, the defendant substantially complied with a requirement that motions for continuance be in writing when his request for a brief continuance was made orally; his satisfaction of all of the requisites for continuance was apparent from only a few pages of the transcript; and when the Supreme Court

19

found that "[a]ny seasoned trial lawyer would agree that insistence upon a written continuance application, supported by an affidavit, in the midst of trial upon the discovery that subpoenaed witnesses are suddenly absent, would be so bizarre as to inject an Alice-in-Wonderland quality into these proceedings." 534 U.S. at 382-85. In *Cotto*, the defendant substantially complied with a contemporaneous objection rule when he repeatedly made his objection *prior* to, not contemporaneously with, the complained-of ruling. 331 F.3d at 245-48; *see also Daley v. Artus*, No. 03 CV 4109(JG), 2003 WL 23278844, at *9 (E.D.N.Y. Dec. 31, 2003) (finding defendant substantially complied with contemporaneous objection rule when his "counsel specified the already clear grounds for his objections once, his other objections were of a similar nature and based on similar or identical questions by the prosecutor, the impropriety of the conduct he was objecting to was clear, and the trial court never asked him for clarification or a conference at sidebar.").

Middleton did not substantially comply with New York's procedural requirement. He made no request for any inquiry of the jurors, and requiring him to do so would have served the legitimate state interest of preventing him from seeking on appeal relief he chose not to seek at trial. *Cf. Cotto*, 331 F.3d at 244 ("In *Garcia*, we relied on the fact that the defendant 'had failed to put the trial judge on notice as to what the defendant now claims he wanted' -- in that case, the presence of his mother's companion in the courtroom -- and so failed to preserve his claim." (quoting *Garcia v. Lewis*, 188 F.3d 71, 80 (2d Cir. 1999))); *Cotto*, 331 F.3d at 246 (noting that the defendant "made clear what ruling was desired" (internal quotation omitted)). As mentioned above, Middleton may have had tactical reasons to avoid presenting the subject juror with a chance to explain herself and dispel any of the concerns raised by the notes, and may

have preferred at that stage, if he did not obtain a mistrial, to avoid an inquiry that could

extinguish his argument on appeal that a new trial was warranted.  By preventing defendants like

Middleton from opportunistically failing to seek inquiries and then demanding them on appeal,

the contemporaneous objection rule in such cases serves the legitimate state interest of

preventing defendants from seeking to generate error in order to create grounds for appeal.

Accordingly, Middleton did not substantially comply with the contemporaneous objection rule.

As none of the *Lee* factors decisively favors Middleton, I find that New York's

contemporaneous objection rule was not applied in an "exorbitant" manner that would render it

inadequate to prevent review of his federal claims.  534 U.S. at 376.  Therefore, his claim that

the trial court should have conducted further inquiry upon receiving the notes in question is

subject to a procedural bar constituting an independent and adequate ground for the Appellate

Division's judgment on that claim, which I cannot disturb.

C.      *Ineffective Assistance of Appellate Counsel*

1.      *Substantive Legal Standard*

The Supreme Court has established the following standard for claims that defense

counsel provided ineffective assistance:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second, the
> defendant must show that the deficient performance prejudiced the
> defense.  This requires showing that counsel's errors were so
> serious as to deprive the defendant of a fair trial, a trial whose
> result is reliable.  Unless a defendant makes both showings, it
> cannot be said that the conviction . . .  resulted from a breakdown
> in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).  Thus, to make out this type of claim, the

petitioner must demonstrate both (1) that his attorney's performance "fell below an objective

standard of reasonableness," *id.* at 688, and (2) that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at

694.

In assessing whether counsel's performance was deficient, judicial scrutiny "must

be highly deferential," and the court must "indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance; that is, the defendant must

overcome the presumption that, under the circumstances, the challenged action might be

considered sound trial strategy."  *Id.* at 689 (internal quotation marks omitted); *accord Jackson v.

Leonardo*, 162 F.3d 81, 85 (2d Cir. 1998); *see also Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003)

(per curiam) ("[C]ounsel has wide latitude in deciding how best to represent a client . . . .").  The

Supreme Court has "'declined to articulate specific guidelines for appropriate attorney conduct,'"

instead emphasizing that "'the proper measure of attorney performance remains simply

reasonableness under prevailing professional norms,'" *Wiggins v. Smith*, 539 U.S. 510, 521, 523

(2003) (quoting *Strickland*, 466 U.S. at 688-89), which requires "a context-dependent

consideration of the challenged conduct as seen 'from counsel's perspective at the time.'"

*Wiggins*, 539 U.S. at 523 (quoting *Strickland*, 466 U.S. at 689).

To establish the required "reasonable probability" that counsel's errors changed

the outcome of the case, the petitioner must show not just "some conceivable effect," *Strickland*,

466 U.S. at 693, but rather "a probability sufficient to undermine confidence in the outcome," *id.*

at 694.  This determination, unlike the determination whether counsel's performance was

deficient, may be made with the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 371-73 (1993).

  2. *Procedural Default*

    On appeal, Middleton did not claim that his trial counsel was ineffective for failing to move to reopen his *Wade* hearing. The respondent contends that this claim is apparent from the record and thus could have been raised on appeal. Middleton himself argued in his writ of error *coram nobis* and again in this very petition that his appellate counsel was ineffective in failing to raise the claim of his trial counsel's ineffectiveness on direct appeal. In his reply papers, however, Middleton asserts that he could not have raised the claim of his trial counsel's ineffectiveness on appeal, before going on to maintain that his appellate counsel was ineffective for not raising this claim on appeal. While it is true that ineffective assistance of counsel claims are often not demonstrable from the record because the reasoning of counsel is not made plain on the record, *see People v. Brown*, 45 N.Y.2d 852, 853 (1978) ("Generally the ineffectiveness of counsel is not demonstrable on the main record, but in this case it is"), at times the nature of the claims of ineffectiveness are such as to render the "subjective reasons" for a trial counsel's choice of strategy "immaterial," *People v. Satterfield*, 66 N.Y.2d 796, 799 (1985); *see also, e.g.*, *People v. Murray*, 752 N.Y.S.2d 442, 444 (App. Div. 2002) (finding counsel not ineffective based solely on trial record); *Capiello v. Hoke*, 698 F. Supp. 1042, 1051-52 (E.D.N.Y. 1988) (finding claim of ineffective assistance of counsel procedurally barred because it could have been raised on appeal and was not); *cf. People v. Turner*, 5 N.Y.3d 476, 483 (2005) (finding appellate counsel ineffective for not raising ineffectiveness of trial counsel on appeal).

Middleton's argument that his trial counsel was ineffective for not moving to reopen his *Wade* hearing requires no inquiry into facts outside of the record. As discussed below, such a motion would have had little chance of success and even less chance of resulting in an order suppressing Roberts's identification of Middleton, and so regardless of trial counsel's subjective intentions it was not ineffective for him not to make it. I conclude, along with the respondent and with Middleton himself in his *coram nobis* application and in all of his submissions here save two pages of his reply, that the claim of ineffective assistance of trial counsel could have been raised on appeal. Since it was not, it may not be raised under a motion pursuant to N.Y. Crim. Proc. Law § 440.10. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). As the claim is unexhausted and can no longer be exhausted, it is deemed procedurally defaulted. *See Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2000) ("[W]hen 'the petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present these claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts must also deem the claims procedurally defaulted." (quoting *Coleman*, 501 U.S. at 735 n.1)).

Ineffective assistance of counsel can be "cause" for the purposes of excusing a procedurally defaulted claim if it rises to the level of constitutional ineffective assistance of counsel. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986).[6] However, since ineffective assistance sufficient to constitute "cause" necessarily rises to the level of an independent constitutional claim, it too must be exhausted. *Id.* at 489; *see also Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (same).

---

[6] Middleton does not argue that a miscarriage of justice would result from this Court's finding this claim procedurally defaulted.

Here, Middleton has argued that his appellate counsel provided ineffective assistance in not arguing that his trial counsel was ineffective, and by seeking leave to appeal the Appellate Division's denial of his writ of error *coram nobis* he has exhausted this claim. If it were meritorious -- that is, if Middleton's appellate counsel was constitutionally ineffective in not raising his trial counsel's ineffectiveness -- this claim would constitute cause which, together with a finding of prejudice, could excuse the default of his claim that his trial counsel was constitutionally ineffective.

          i.       *The Effectiveness of Middleton's Appellate Counsel*

Middleton's appellate counsel was not constitutionally ineffective. As his performance was not deficient, I have no occasion to consider whether there was a reasonable probability of a different outcome had he pursued a different strategy. Initially, an appellate counsel is under no obligation to raise every nonfrivolous issue, but has latitude to use judgment in selecting the strongest claims to pursue on appeal. *See Evitts v. Lucey*, 469 U.S. 387, 394 (1985) (noting that appellate counsel "need not advance *every* argument, regardless of merit, urged by the appellant" (emphasis in original) (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). This point is especially salient in this case, where Middleton's claims regarding the trial court's obligation to inquire into the jury notes presented more substantial questions both procedurally and substantively. In light of the weakness of the claim that his trial counsel was ineffective in not moving to reopen his *Wade* hearing, Middleton has failed to rebut the "strong presumption" that his appellate counsel's performance "fell within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

The claim that Middleton's trial counsel was constitutionally ineffective for failing to move to reopen his *Wade* hearing is meritless. It was "sound trial strategy," *Strickland*, 466 U.S. at 689, for Middleton's trial counsel to conclude that Roberts's testimony at trial that one of the officers who directed him to the precinct had been involved in the pursuit of Middleton would not have been likely to persuade the trial court to revise its ruling even if the *Wade* hearing were reopened. Roberts's trial testimony would have been impeached by his own prior testimony at the *Wade* hearing, the testimony of the officers involved in chasing Middleton, and the testimony of his own friend Marley Edwards, who did not report recognizing the officers, Trial Tr. 283-84, 297. It is also doubtful that the result of the *Wade* hearing would have changed had the court credited Roberts's trial testimony. That an officer who had chased Middleton told Roberts to go to the 67th Precinct does not necessarily imply that the officer knew that Middleton would be at the front desk at the moment when Roberts reached the precinct and directed him there in order to orchestrate a showup. At a minimum, a reasonable attorney could conclude that the likelihood of success on such a motion was too slim to pursue. Accordingly, Middleton's trial counsel did not perform deficiently in failing to make this motion, and Middleton's appellate counsel did not perform deficiently in failing to claim that he did.

3.     *The Merits of Middleton's Claim of Ineffective Assistance of Trial Counsel*

As Middleton has failed to demonstrate that his appellate counsel was ineffective in not raising the claim that his trial counsel was ineffective in moving to reopen his *Wade* hearing, Middleton has failed to demonstrate cause for the procedural default of his claim that his trial counsel was ineffective. Accordingly, this claim is procedurally barred. Ironically, however, due to the labyrinthine nature of our habeas corpus jurisprudence, I was obliged to

consider the merits of this claim in determining whether Middleton's appellate counsel was ineffective for not making it. For the reasons stated in Section C.2.i, *supra*, if Middleton's claim that his trial counsel was ineffective for not moving to reopen his *Wade* hearing was not procedurally barred, I would deny it.

D.     *The Effectiveness of Middleton's Appellate Counsel*

The Appellate Division, in denying Middleton's writ of error *coram nobis*, disposed of Middleton's claim of ineffective assistance of appellate counsel on the merits, *Middleton*, 822 N.Y.S.2d at 459. Therefore, I am obliged to apply AEDPA's limited scope of review to this decision. For the reasons stated in Section C.2.i, *supra*, the Appellate Division's decision was not contrary to or an unreasonable application of *Strickland*.

CONCLUSION

For the reasons stated above, the petition is denied. As Middleton has failed to make a substantial showing that he was denied a constitutional right, no certificate of appealability shall issue.

So ordered.

JOHN GLEESON, U.S.D.J.

Dated: Brooklyn, New York
        December 3, 2007